Marvin Earl Hart v. Commissioner.
Hart v. Commissioner
Docket No. 3036-67.
United States Tax Court
T.C. Memo 1968-130; 1968 Tax Ct. Memo LEXIS 170; 27 T.C.M. (CCH) 628; T.C.M. (RIA) 68130; June 26, 1968, Filed Marvin Earl Hart, pro se, 1745 N. Gardner St., Los Angeles, Calif. Brice A. Tondre, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1961, 1963, 1964, and 1965 in the amounts of $533.72, $437, $275, and $521, respectively; additions to tax under section 6653(a), I.R.C. 1954, for the calendar years 1963, 1964, and 1965 in the amounts of $21.85, $13.75, and $26.05, respectively; and an addition to tax under section 6651(a), I.R.C. 1954, for the *171 calendar year 1965 in the amount of $130.25. The deficiency determined for the calendar year 1961 resulted from respondent's 629 disallowance of petitioner's claims for net operating loss carrybacks to the year 1961 from the years 1963 and 1964, which claims had been tentatively allowed. The issues for decision are: (1) Whether petitioner received unreported income for the calendar years 1963, 1964, and 1965, and (2) whether petitioner is entitled to dependency credit exemptions for his two minor children for the calendar years 1963, 1964, and 1965. Findings of Fact Some of the facts were orally stipulated at the trial and are found accordingly. Petitioner is an individual who at the time the petition in this case was filed resided in Los Angeles, California. He filed individual Federal income tax returns for the calendar years 1961, 1963 and 1964 with the district director of internal revenue at Los Angeles, California. Petitioner has a degree in mechanical engineering and during the calendar year 1961 was employed by three different employers and received compensation with income tax withheld from his various employers in the amounts shown below: Employer
Wages
Federal incometax withheld
Milman Company
$4,864.02
$836.56
Chase Consulting Com- pany
1,249.63
197.34
Romar Engineering Com- pany
592.50
86.80
*172 In 1962 petitioner became unemployed and on August 12 of that year applied for unemployment insurance. Petitioner was sent a notice that he was entitled to receive unemployment insurance at a weekly rate of $41 until a total award of $922 had been exhausted. This notice stated that for the quarter ended June 1961 petitioner had received total wages of $227.50 from the Chase Consulting Company, that for the quarter ended September 1961 he had received total wages from Chase Consulting Company of $1,022.13, and that for the quarter ended December 1961 he had received total wages of $592.50 from Romar Engineering Company. This notice indicated that petitioner had received no wages for the quarter ended March 31, 1962. On January 17, 1958, petitioner opened a savings account with the United Savings and Loan Association. He had a balance in this account as of April 7, 1961, of $2,956.02. The only deposit which he made to this account after December 31, 1960, was a deposit on January 10, 1962, of $241. On April 8, 1961, petitioner opened a savings account with American Savings and Loan Association with the deposit of a check in the amount of $2,000. On August 9, 1961, petitioner made *173 a deposit of $1,000 in cash to this account. No other deposits were made to this account. On April 10, 1961, petitioner opened a savings account at the California Federal Savings Association with the deposit of a check in the amount of $1,137.83. This was the only deposit which petitioner made to this account. On January 4, 1963, petitioner withdrew the entire balance in his United Savings and Loan Association account and received a check in the amount of $3,400 and cash in the amount of $56.88. On January 4, 1963, petitioner withdrew the entire balance in his American Savings and Loan Association account, and received a check in the amount of $3,200 and cash of $11.10. On January 11, 1963, petitioner withdrew the total balance from his California Federal Savings Association account, receiving a check in the amount of $1,175 and cash in the amount of $3.40. On January 11, 1963, petitioner opened a savings account in the Gibraltar Savings and Loan Association with a deposit of $7,775. On February 8, 1963, and March 8, 1963, he made withdrawals from this account in the amounts of $75 and $125, respectively, and on April 5, 1963, he withdrew the balance of $7,655.80 in the account, *174 there having been interest credited to the account as of the end of March 1963 of $80.80. On April 9, 1963, petitioner opened an account in the Los Angeles Federal Savings and Loan Association with a deposit of $7,400. During the remainder of the year 1963, petitioner made withdrawals from his account at the Los Angeles Federal Savings and Loan Association in a total amount of $1,024, the total withdrawals consisting of five separate withdrawals, one in each of the months August through December of 1963. During the year 1964 petitioner made total withdrawals from his savings account at the Los Angeles Federal Savings and Loan Association in the amount of $2,192.54, the total withdrawals being composed of one withdrawal in each month of the year except the month of June when two withdrawals were made. During the year 1965 petitioner made 630 total withdrawals from his savings account at the Los Angeles Federal Savings and Loan Association in the amount of $2,207.05. He made 10 withdrawals from this account in 1965, one in each month of the year, except the months of March and June. On June 8, 1965, petitioner made a $300 deposit to his account at the Los Angeles Federal Savings *175 and Loan Association. This $300 came from a check in the total amount of $472.91 which petitioner received as a refund of income tax paid for the year 1961 on the basis of the tentative allowance of a net operating loss carryback to that year from the year 1964. Petitioner kept the remaining $172.91 in cash at the time he made the deposit. In each of the years 1963 and 1964 petitioner received a disability pension from the Veterans Administration in the amount of $696 and in the year 1965 petitioner received a disability pension from the Veterans Administration in the amount of $698. During the year 1963 petitioner received unemployment compensation of $645 which was composed of $184 which remained unpaid as of the beginning of 1963 on the maximum award of $922 which was shown on the unemployment insurance notice with respect to his claim made on August 12, 1962, and $461 from an extension of his unemployment compensation to which he was entitled under California law. During the calendar year 1963 petitioner worked for one week for Sass-Widders Corporation and received total wages in the amount of $320 from which was withheld F.I.C.A. employee tax in the amount of $11.24 and *176 Federal income tax of $50.70, leaving a net amount received by petitioner of $258.06. In 1963 petitioner received a refund of 1962 income tax withheld in the amount of $74.40, and in 1964 petitioner received a refund of $50.70 of income tax which had been withheld on his $320 wages in 1963. In 1964 petitioner received $70.75 with interest thereon of $1.17 as a refund of income tax for the year 1961 on the basis of the tentative allowance of a net operating loss carryback from the calendar year 1963 to the calendar year 1961. The totals of the items of funds available to petitioner as heretofore listed are $3,224.64 for the year 1963, $3,011.16 for the year 1964, and $3,077.96 for the year 1965. Petitioner was able to account for no other sources of funds available to him during the years 1963, 1964, and 1965, except for a refund of a telephone deposit of $50 with interest received in 1964, which deposit he had made in 1963, and approximately $500 in cash, which amount he had accumulated in earlier years and had on hand as of January 1, 1963. On July 1, 1963, petitioner opened a business as a consulting engineer which he operated under the name of "Academy of Consulting Engineers *177 and Scientists" from his apartment in Los Angeles. Petitioner held himself out as operating a consulting service under this name to render services as a mechanical engineer. Petitioner would look in the newspapers and in engineering publications for names of firms which might be in need of the services of a mechanical engineer. He would drive in his automobile to various locations to determine the type of business such firms operated and the type of mechanical engineering services they might need. Petitioner upon his return to his apartment from these trips would write a letter to some of the businesses he had observed offering his services as a consulting engineer. For the calendar year 1963 petitioner had the following expenses in connection with his business: Depreciation on typewriter purchased prior to January 1, 1963
$ 30.00
Los Angeles business tax
19.20
Rent of business property [1]
460.00
Miscellaneous business expenses:
Telephone service
$ 31.52
Automobile mileage
307.50
Reference books and pub- lications
27.40
Office supplies and postage 10.00
376.42
Total business expenses $885.62
*178 The amount claimed by petitioner as automobile mileage was arrived at by multiplying the 3,075 miles which he drove for business purposes by 10 cents a mile. As of January 1, 1963, petitioner had a 1958 Chevrolet which he had purchased for cash in 1958. This was the only automobile petitioner owned and the one he drove for business purposes. In 1964 petitioner incurred total business expenses in the operation of his consulting business of $2,629.94 which consisted of 631 depreciation on the typewriter of $24, Los Angeles business tax of $19.20, rent on business property of $920 (two-thirds of the $1,380 rent on petitioner's apartment), other business expenses totaling $1,666.74 which were composed of telephone service of $66.74, automobile expense of $1,500, publications of $50, and office supplies of $50. Petitioner had a telephone throughout the years here in issue, and from January 1, 1963 through June of 1963 paid at the rate of $4.75 a month for his telephone service. As of July 1, 1963, he converted his service to a business service and was required to make a deposit of $50 in connection with converting the telephone to a business telephone and pay a higher monthly rate. *179 Petitioner's automobile expense for the year 1964 of $1,500 was computed on the basis of 15,000 miles of business driving at 10 cents a mile. Petitioner discontinued his business as a consulting engineer toward the end of 1964. Petitioner averaged 15.6 miles per gallon of gasoline in driving his automobile and he purchased gasoline during the years here in issue at 28 cents a gallon. Petitioner did his own repairs on his automobile and purchased only the parts needed for such repairs. Petitioner bought insurance on his automobile and paid a state license fee on his automobile. During the years 1963, 1964 and 1965 petitioner's total expenditures for oil, gas, insurance, license fees and repairs for his automobile were in the amounts of $147.15, $415, and $161.50, respectively. Petitioner's total expenditures during the years 1963, 1964 and 1965 for telephone service including his service for business purposes were the respective amounts of $62.02, $66.74, and $57. The business expenses of petitioner which we have found are the expenses he listed on his income tax returns, which respondent at the trial stipulated as being business expenses incurred by petitioner during the years *180 1963 and 1964. Petitioner filed amended returns claiming additional business expenses for each of the years 1963 and 1964, the primary basis for the increase being treating his entire apartment rent as a business expense and claiming a deduction for depreciation on his automobile in addition to the automobile expense on a mileage basis. Petitioner estimated that in 1963 and 1964 he expended approximately $3 per week for groceries or a total of $156 for each of these years and that in 1965 he expended $208 for groceries. Petitioner estimated that he did not expend over $24 a year for laundry and hair cuts. Petitioner did his own laundry at a laundromat where the charge was 25 cents for a load of laundry and he got hair cuts from a barber on an average of every 6 weeks to 2 months. He would go to a nonunion barber whose charge was less than the charge in a union shop. In each of the years 1963, 1964, and 1965 petitioner paid $1,200 to his former wife for the support of their two minor children. Petitioner filed his income tax return for the year 1961 on a form 1040A. On this return petitioner reported the wages and withholdings we have set forth in our findings, and claimed dependency *181 credit exemptions for his two children. For the year 1963 petitioner filed his income tax return on form 1040. The only receipts reported by petitioner for the year 1963 were wages of $320 and interest of $255.86. Petitioner reported a business loss of $885.62 and net loss of $309.76. He reported no receipts from his consulting business. He claimed three personal exemptions. Petitioner filed a claim for a net operating loss carryback in the amount of $309.76 from the year 1963 to the year 1961 which was tentatively allowed. For the year 1964 the only income which petitioner reported was $275.25 of interest income. He claimed a business loss of $2,354.69 which was the difference in his reported interest income and the $2,629.94 of business expenses claimed in connection with his consulting business. Petitioner reported no receipts from his consulting business for 1964. On his income tax return for 1964 petitioner listed three personal exemptions, one for himself and two for his minor children. Petitioner filed a claim for a net operating loss carryback from the year 1964 to the year 1961 in the amount of $2,354.69 which claim was tentatively allowed by respondent. Respondent in his *182 notice of deficiency computed petitioner's 1961 income on the basis of the adjusted gross income of $6,706.15 disclosed on his return with a standard deduction of $670.62 and three exemptions totaling $1,800, leaving taxable income of $4,305.53 with a tax of $901.23 which was the amount of tax shown by petitioner on his return. Respondent in the notice of deficiency stated that a tentative allowance of $533.72 had been made for loss carrybacks claimed in 1964 and 1965 (apparently based on carryback losses in 1963 and 1964) and determined a deficiency of $533.72 for the year 1961 because of 632 disallowance of the loss carryback deductions previously tentatively allowed. Respondent in his notice of deficiency determined that petitioner had unreported income of $3,396.06 for the year 1963. From this amount there was subtracted a $309.76 loss shown on petitioner's return to arrive at adjusted gross income as corrected of $3,086.30. Based on $3,086.30 respondent computed the deficiency which he determined for the year 1963 of $437 by allowing petitioner a personal exemption but no dependency credit exemptions for his two children. Respondent in his notice of deficiency determined *183 that petitioner had unreported income of $4,889.24 for the year 1964 from which was subtracted the $2,354.69 loss shown on petitioner's 1964 return leaving adjusted gross income of $2,534.55 on the basis of which respondent computed the deficiency in petitioner's income tax allowing petitioner a personal exemption and no dependency credit exemptions for his two children. For the year 1965 respondent determined that petitioner had unreported income of $4,137.03 and computed his income tax liability and determined the deficiency on the basis of adjusted gross income of $4,137.03 allowing petitioner one personal exemption and no exemptions for his two daughters. Respondent gave the following explanation for the adjustments he made to petitioner's income. It has been determined that you realized taxable ordinary income during the taxable years ended December 31, 1963, December 31, 1964, and December 31, 1965 in the amounts of $3,396.06, $4,889.24 and $4,137.03, respectively, which you failed to report on your income tax returns for those years. Respondent explained his disallowance of petitioner's two claimed dependency credit exemptions with the statement that petitioner had failed *184 to establish that his two daughters qualified as his dependents under section 151 of the Internal Revenue Code. Opinion It is petitioner's position in this case that he had no unreported taxable income for any of the years here in issue. Although the notices of deficiency did not disclose respondent's basis for determining the amounts of unreported income shown for the years 1963, 1964, and 1965, at the trial respondent's counsel stated that the amounts of unreported income as shown in the statutory notice of deficiency were arrived at by the "application of reconstruction of income principles under the source and application of funds." Respondent's counsel gave the further explanation that respondent had to the best of his ability determined that expenditures and deposits by petitioner were greater than sources of funds that respondent was able to find. The issue here is purely factual. Petitioner has shown clearly that the deposit of funds made on January 11, 1963 came from withdrawals from previous accounts and that the deposit of funds on April 9, 1963, came from a withdrawal from the account to which a deposit was made on January 11, 1963. Therefore, *185 petitioner has accounted entirely for the two large deposits he made to savings accounts as being from funds accumulated prior to January 1, 1963. At respondent's request petitioner produced the pass books of his various savings accounts. The only other deposit of funds made by petitioner during the years here in issue was shown to have come from a refund of his 1961 income tax. The total expenditures made by petitioner for rent and child support in each of the years here in issue is $2,580. Petitioner stated that the rent he paid for his apartment included all utility charges except his telephone. When the amount of $2,580 is subtracted from the funds available to petitioner to expend in each of the years here in issue which funds were primarily from sources which caused them not to represent taxable income, there remains for petitioner's other expenditures $643.84 in 1963, $484.89 in 1964, and $497.96 in 1965. Respondent has not questioned petitioner's claimed business expense deductions. The largest business expense deduction other than rent is automobile expense which respondent concedes petitioner may deduct on the basis of 10 cents a mile. This automobile expense creates *186 a deduction in an amount substantially greater than petitioner's actual expenditures in the years here in issue in operating his automobile. Petitioner made no payments on his automobile in the years here in issue since he had previously purchased it for cash and his only repair costs were for parts since he did the work of repair himself. Petitioner estimated the actual cost of operating his automobile in each of the years here in 633 issue and we have found these amounts of $147.15, $415, and $161.50 for the years 1963, 1964, and 1965 to represent petitioner's actual out-of-pocket costs of operating his automobile in each of these years. If we accept petitioner's own estimate of his expenditures, the total amounts he expended in addition to child support and rent were $493.77 in 1963, $790.94 in 1964, and $450.50 in 1965. Accepting this estimate of expenses there would remain for other incidental expenses not listed by petitioner over $150 of the receipts accounted for by petitioner in 1963, there would be a deficit of approximately $306 in 1964, and there would remain an excess of approximately $47 in 1965. Although petitioner's estimate of his expenditures for groceries *187 and personal expenses are small in comparison to estimates of similar expenditures which appear in many of our opinions involving questions of whether taxpayers are entitled to exemptions for dependents, we conclude from observing petitioner at the trial that these estimates are within a reasonable range of the amounts he spent for these items. The only funds which petitioner testified he had available not substantiated by documentary evidence produced at the trial, was cash of $500 as of the beginning of 1963. Considering the fact that petitioner had made a cash deposit to his savings account of $1,000 in 1961, we believe his testimony with respect to the $500 of cash he had at the beginning of 1963. When the $500 is added to petitioner's other sources of funds, petitioner's total available funds for the years 1963 through 1965 exceed his estimated expenditures by $391.48. For the year 1961 petitioner's income after income taxes was approximately $5,530. If his social security tax is deducted from his 1961 income after taxes there would remain approximately $5,000 of cash available to petitioner for expenditures and savings for the year 1961. Petitioner on August 9, 1961, made a *188 cash deposit of $1,000 and at the beginning of 1962 made another cash deposit of $241. On April 10, 1961, petitioner deposited a check in the amount of $1,137.83 in the California Federal Savings Association. If no part of this check came from petitioner's 1961 earnings but all of the $1,241 was from such earnings, petitioner's total expenditures in 1961 could not have exceeded $4,759. If any portion of the April 10, 1961, deposit came from receipts which petitioner had in 1961, his funds available for expenditures in 1961 would be even less than $4,759. The amount of petitioner's savings in 1961, a year during which his receipts are not questioned, supports petitioner's estimates of his expenditures for living costs. Petitioner stated unequivocally that even though he tried to obtain business as a consultant, he obtained no such business and had no receipts from that or any other undisclosed source during the years 1963, 1964, and 1965. He produced the passbooks of his Building and Loan Associations savings accounts to establish his deposits and withdrawals and documentary evidence to support much of his other testimony. Even though petitioner produced such substantial evidence *189 in support of his testimony, respondent produced no evidence of any source of income which petitioner might have had. If petitioner had any income from his consulting business which he did not report, it would appear that respondent could have produced evidence of at least one client who made some payment to petitioner during one of the years here in issue. Respondent conceded that petitioner was in a consulting business and that he did incur business expenses in the amounts shown on his original returns. While the lack of any receipts would bear on the question of whether petitioner actually was in a business or whether he did incur business expenses, respondent concedes both of these factors. Petitioner filed amended returns in which he greatly increased the deductions he claimed for business expenses, primarily by claiming the entire rent on his apartment as a business expense and depreciation on his automobile in addition to car expense for the use of his automobile in his business computed on the basis of 10 cents a mile. Respondent did not concede the expenses claimed on the amended return and petitioner failed to prove any amount of business expense in excess of the amounts *190 conceded by respondent. Petitioner has totally failed to establish that he is entitled to dependency credit exemptions for his two children for 1963, 1964, and 1965. He produced no evidence as to the cost of support of his two daughters, merely showing that he furnished $1,200 a year for their support. The losses as claimed for the years 1963 and 1964 on the original returns which formed the basis of the net operating loss carry-back claims, did not result from any deduction for dependency exemptions and it was on the basis of losses shown on petitioner's original returns for the years 1963 and 1964 that the tentative 634 carryback allowances were made. Petitioner had no taxable income in 1965. Therefore, there is no deficiency in any of the years here in issue even though we conclude that petitioner has failed to show that he is entitled to the dependency credit exemptions. Since as a result of our opinion there will be no deficiency, and since absent any deficiency, there is no addition to tax. Decision will be entered for petitioner. Footnotes
1. This represents a portion of the rent of $1,380 paid by petitioner on the apartment in which he resided. Petitioner computed the amount by assuming business usage of the apartment to be two-thirds of its total usage, and since he did not commence this business until July 1, he determined that one-half of the two-thirds amount was business usage for 1963.↩